# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | Civil Action No. 5:16-cr-001 |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| LAMARCUS THOMAS, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Lamarcus Thomas ("Thomas") moves to suppress evidence obtained

from the search of an LG cell phone found on his person at the time of his arrest. ECF No.

28. The court held an evidentiary hearing on August 17, 2016, during which the court heard

the testimony of Detective Charles Coleman ("Detective Coleman"), an officer with the

Winchester, Virginia Police Department (the "WPD"), who swore and submitted an

Affidavit for Search Warrant ("affidavit"), ECF No. 39–1, in support of the search warrant

at issue.

As a result of the images and videos found on Thomas' LG cell phone and interviews

conducted thereafter, the United States charged Thomas as the sole defendant in an

indictment alleging six counts of using a minor to engage in sexually explicit conduct for the

purpose of creating child pornography. ECF No. 1. Thomas argues that the affidavit

submitted by Detective Coleman to the state magistrate to obtain a search warrant for

Thomas' LG cell phone contained insufficient facts, rendering the warrant invalid. The

government counters that the LG cell phone warrant is facially valid as to each of the

offenses listed in the warrant—aggravated sexual battery, production of child pornography,

1

and possession of child pornography—and that Detective Coleman possessed a good faith belief as to the warrant's validity, satisfying the good faith exception articulated in United States v. Leon, 468 U.S. 897, 923 (1984). Alternatively, the government argues that even if Detective Coleman's affidavit was too thin to support probable cause as to the crimes of possession and production of child pornography, it was plainly sufficient as to the aggravated sexual battery charge, rendering suppression inappropriate under Leon. Finally, the government argues that the evidence of child pornography was in plain view during the search for evidence of aggravated sexual battery.

The court finds that the warrant at issue is facially invalid as the supporting affidavit is deficient in two respects. First, while the affidavit contains facts supporting a finding of probable cause as to the aggravated sexual battery charge, no such facts exist as to the possession or production of child pornography charges. Under controlling Fourth Circuit precedent, evidence of sexual assault, standing alone, is insufficient to justify a search warrant for child pornography. United States v. Doyle, 650 F.3d 460, 472 (4th Cir. 2011).

Second, even as to the adequately supported charge of aggravated sexual battery, the affidavit contains insufficient facts linking it to Thomas' LG cell phone. The only reference to the LG cell phone in Detective Coleman's affidavit is the fact that it was found on Thomas' person at the time of his arrest on January 5, 2015. Because the affidavit provides no nexus whatsoever between Thomas' LG cell phone and the aggravated sexual battery offense listed in the warrant, the magistrate had no facts sufficient to establish probable cause to search the LG cell phone.

2

Nevertheless, the court concludes that the Leon good faith exception applies in this case. At the time he submitted the affidavit, Detective Coleman knew that the LG cell phone played a role in the aggravated sexual battery offense listed in his affidavit. During his investigation, Detective Coleman learned from the victims' mother that Thomas had called her several times in an attempt to set up another rendezvous with her children and left her multiple voicemail messages. Although Detective Coleman's affidavit itself provides no link between the use of the LG cell phone and the crime, it is uncontroverted that Detective Coleman knew that Thomas used a phone in furtherance of his criminal conduct. Detective Coleman reasonably could infer that the LG cell phone seized at Thomas' arrest was the phone that Thomas used to call the victims' mother just a few months earlier. Thus, it is clear that Detective Coleman "'harbored an objectively reasonable belief in the existence' of this factual predicate," United States v. McKenzie-Gude, 671 F.3d 452, 458-59 (4th Cir. 2011) (quoting Leon, 468 U.S. at 926), linking Thomas' phone to the aggravated sexual battery. It cannot be said here that Detective Coleman relied on "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923. As was the case in McKenzie-Gude, "Leon presents no barrier to holding that the experienced officer[ ] in this case, who swore out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to [him] but inadvertently not presented to the magistrate." McKenzie-Gude, 671 F.3d at 460.

Accordingly, the court will **DENY** Thomas' motion to suppress, ECF No. 28.

## A.

On January 13, 2015, Detective Coleman submitted an affidavit for a search warrant of an LG cell phone seized during Thomas' arrest.[2] The warrant indicated the search related to the following offenses: (1) possession of child pornography, (2) production of child pornography, and (3) aggravated sexual battery. In describing the "place, person, or thing to be searched," the warrant application stated, "A cell phone black/silver in color, with 'LG' printed in silver on the front, 'LG' printed in dark gray on the back, in a purple and black case belonging to LaMarcus Thomas. Phone is in possession of the Winchester Police Department." In the portion of the affidavit describing the "things or persons to be searched," the warrant application stated:

> Any and all incoming and outgoing calls, gps locations, photos, text messages, voicemails, media, websites, instant messages, address books, media card, Sim card, contacts, contact numbers, social media websites to include but not limited to Facebook, Twitter, MySpace, Snap Chat, Vine, etc., media cloud, any stored electronic data that may be stored inside a smart phone that would be related to this crime and/or crime scene.

In the narrative portion of the affidavit, Detective Coleman submitted the following:

> 01-05-15 Det. Coleman obtained two arrest warrants on LaMarcus Thomas for aggravated sexual battery. Det. Coleman located and arrested Thomas in the 500 block of North Loudon Street on the same date. During the arrest Det. Coleman removed a LG cell phone that Thomas advised was his personal cell phone. Det. Coleman is investigating a case were two children were allegedly molested by LaMarcus Thomas. During an interview with Det. Coleman LaMarcus Thomas

---

[1]     The facts recounted below consist primarily of those described by Detective Coleman during his testimony at the suppression hearing.

[2]     Copies of the warrant and affidavit are found at ECF Nos. 28–1 and 39–1.

corroborated both juvenile's statements against him. Det. Coleman has received many hours of training to investigate child sexual abuse cases and has learned through training and experience that it is common for offenders to keep contact items from victims such as follows; pictures of victims, text messages, phone calls, Voice mails and/or child pornography on their cell phone/storing devices. Det. Coleman had reason to believe Thomas may also have these types of items on his cell phone/media cloud. Det. Coleman is requesting a search warrant for the cell phone taken from Thomas's person at the time of arrest. Det. Coleman and the Winchester Police Department have maintained possession of this cell in the evidence room per WPD general orders since the time of arrest. /s/ Det. Coleman.

On January 13, 2015, the state magistrate issued the search warrant for the LG phone seized from Thomas during his arrest (hereinafter the "LG warrant"). Detective Coleman did not examine the LG cell phone himself, but turned it over to the Virginia State Police crime lab for forensic analysis. The Virginia State Police provided a report indicating that images and videos of child pornography were found on the SD memory card taken from the LG cell phone. Detective Coleman was unable to specify the procedure employed by the Virginia State Police to search the LG cell phone other than to state that while the investigators were unable to access the password protected phone itself, they were able to remove and search the LG cell phone's SD card. After the forensic report issued, agents of the Federal Bureau of Investigation ("FBI") interviewed Thomas on April 10, 2015, and the federal indictment issued on January 13, 2016.

**B.**

Detective Coleman has had a long career as a police officer and significant experience investigating cases of child battery and sex crimes with the WPD. Detective Coleman has taken multiple classes discussing child neglect, child abuse, and child sexual assault. Detective Coleman testified that he understands that persons who engage in sexual crimes related to children often engage in crimes involving child pornography. Detective Coleman explained that child molesters frequently keep images containing child pornography on electronic devices such as computers, cell phones, and other forms of media storage.

Detective Coleman has received substantial training in drafting search warrants, both at the police academy and through the WPD. Detective Coleman testified that it is WPD policy to provide no more probable cause information than necessary to obtain a warrant because of media access to warrants.

Detective Coleman explained that he became involved in the investigation of Thomas in November 2014 after the WPD received an anonymous tip that Thomas had abused a child (hereinafter referred to as "MV4"). After learning of the alleged abuse, Detective Coleman contacted MV4's mother. The mother advised Detective Coleman that MV4 and a sibling (hereinafter referred to as "MV3") had spent the night with Thomas. Thereafter, Thomas repeatedly called her to arrange additional sleepovers.

Detective Coleman arranged for the Child Advocacy Center to interview MV3 and MV4 regarding their interactions with Thomas. Detective Coleman observed the interviews from another room. Detective Coleman testified that the victims stated that they had been sexually assaulted by Thomas during an overnight visit at a hotel. The interviews also

6

revealed that Thomas communicated with the victims' mother by phone calls, often leaving voicemail messages.

Upon contacting the hotel, Detective Coleman learned that Thomas stayed there on September 16, 2014 and October 11, 2014. The government introduced hotel receipts for those nights bearing Thomas' signature. ECF No. 39–6, at 2-3. In particular, the hotel records confirmed that the October 11, 2014 receipt indicated "1 + 2," meaning one adult and two children. Id. at 3.

After he confirmed that Thomas rented rooms at the hotel, Detective Coleman contacted Thomas via the phone number given to him by the victims' mother and arranged to interview Thomas at the WPD. ECF No. 35, at 2. On December 18, 2014, Detective Coleman interviewed Thomas. During that interview, Thomas admitted sexually assaulting both victims. Id. at 2-3.

On January 5, 2015, at the instruction of state prosecutors, Detective Coleman obtained two arrest warrants against Thomas for aggravated sexual battery. ECF No. 35, at 3; ECF No. 39–2. Though the arrest warrant application reflects an offense date of October 11, 2014—the date the hotel receipt indicated Thomas rented a hotel room accompanied by two children—Detective Coleman testified that he later learned that different children had accompanied Thomas to the hotel on October 11, 2014. Detective Coleman later discovered that MV3 and MV4 accompanied Thomas to the hotel on September 16, 2014, the date on which the hotel records indicated Thomas rented a room, but made no mention of the fact that he was accompanied by children.

7

On January 5, 2015, Detective Coleman arrested Thomas. While arresting Thomas, Detective Coleman found the LG cell phone located in Thomas' pocket. On January 6, 2015, Detective Coleman obtained and executed search warrants for two of Thomas' recent residences. Detective Coleman testified that he seized a laptop, a tablet, and an additional cell phone at one residence. Detective Coleman testified that this phone was an older model, found in a bag with miscellaneous items. After executing the residential search warrants, Detective Coleman consulted with an Assistant Commonwealth's Attorney about obtaining a search warrant for the LG cell phone seized during Thomas' arrest. On January 13, 2015, Detective Coleman submitted the affidavit to search the LG cell phone.

During his testimony at the suppression hearing, Detective Coleman acknowledged that the affidavit in support of the LG warrant did not contain the date of the alleged offense or the ages of the victims, but stated that this information was contained in the earlier arrest warrants which he referenced in the LG cell phone warrant affidavit. Likewise, Detective Coleman confirmed that the only information in the affidavit about the LG cell phone was that the phone was recovered from Thomas' person at the time of his arrest.

Detective Coleman also acknowledged that at the time he submitted the affidavit, he had no information that Thomas had used his LG cell phone to take pictures or videos of the minor victims. The reference in his affidavit to having "reason to believe Thomas may have these types of items on his cell phone/media cloud" resulted from his training and experience in investigating child sex crimes, rather than anything specific about Thomas.

After receiving authorization to search the LG cell phone, Detective Coleman sent it to the Virginia State Police for examination. As noted above, Detective Coleman testified

8

that the Virginia State Police's forensic examination of the SD card contained in the LG cell phone revealed pornographic images of children other than MV3 and MV4. Detective Coleman testified that the images of the children on the SD card were produced by Thomas on October 11, 2014.

## II.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." United States v. Banks, 482 F.3d 733, 738 (4th Cir. 2007) (quoting Maryland v. Dyson, 527 U.S. 465, 466 (1999)). Warrants must be supported by probable cause, which "'exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in the place to be searched." United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule, absent operation of the good faith exception described in Leon. See United States v. Andrews, 577 F.3d 231, 235 (4th Cir. 2009). Thomas challenges both the facial validity of the search warrant and the applicability of the good faith exception.

## A.

Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The magistrate's findings are entitled to "great deference," United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990), and the court limits its inquiry to whether the warrant contained a "substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239.

9

The affidavit submitted by Detective Coleman includes the following relevant facts: (1) on January 5, 2015, Detective Coleman arrested Thomas pursuant to arrest warrants for aggravated sexual battery; (2) during the course of the arrest, Detective Coleman seized an LG cell phone that Thomas indicated was his personal cell phone; (3) prior to the arrest, Detective Coleman was investigating whether Thomas had sexually assaulted two children and Thomas had corroborated statements made by the alleged victims; and (4) that Detective Coleman received training indicating that offenders in child sexual abuse cases tend to keep evidence of various sexual offenses on their cell phones.

For two reasons, these few facts fail to support a finding of probable cause. First, there are no facts supporting a finding of probable cause as to the child pornography offenses. The affidavit contains no facts supporting the conclusion that Thomas engaged in crimes involving child pornography, much less why the LG cell phone was likely to reveal evidence related to such crimes. Second, while the affidavit contains sufficient facts supporting the aggravated sexual battery charge, it contains no facts linking that crime to Thomas' LG cell phone. In particular, the affidavit does not share with the magistrate Detective Coleman's knowledge gleaned from his investigation that Thomas used a telephone to perpetrate the aggravated sexual battery offenses. Rather than articulating any nexus between the LG cell phone and the crimes at issue, the affidavit explains generally that it is common for sex offenders to have incriminating evidence on their cell phones. Of course, Detective Coleman knew facts linking Thomas' use of a phone to the aggravated sexual battery offenses—namely, Thomas' communications with the victims' mother—but he neglected to put them in the affidavit.

10

The face of the affidavit simply provided the magistrate with no information linking the LG cell phone and the crimes listed in the warrant. Thus, there was no "substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239. Accordingly, the court finds the LG warrant facially invalid.

## B.

"Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting Leon, 468 U.S. at 926). The good faith exception is rooted in the underlying purpose of the exclusionary rule, which is to deter police misconduct. Andrews, 577 F.3d at 235-36; see also United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) ("[A] court should not suppress the fruits of a search conducted under the authority of a warrant … unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"). As the Fourth Circuit has recognized, the deterrence objective of the exclusionary rule "is not achieved through the suppression of evidence obtained by an officer acting with objective good faith within the scope of a search warrant issued by a magistrate." Andrews, 577 F.3d at 235 (quoting United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004), and Leon, 468 U.S. at 920) (internal quotation marks omitted). "[I]t is the magistrate's responsibility to determine whether probable causes exists, and officers cannot be expected to second-guess that determination in close cases." United States v. Mowatt, 513 F.3d 395, 404 (4th Cir. 2008), abrogated on other grounds by

11

Kentucky v. King, 563 U.S. 452 (2011). Accordingly, "under Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" Perez, 393 F.3d at 461 (citing Leon, 468 U.S. at 922).

In most cases, "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. at 461. However, courts recognize four circumstances in which an officer's reliance on a warrant is not "objectively reasonable":

- First, where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

- Second, where the magistrate acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;

- Third, where a supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

- Fourth, where a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

United States v. Williams, 548 F.3d 311, 317-18 (4th Cir. 2008) (internal citations, quotation marks, and brackets omitted). "In any of these four circumstances . . . the Leon good faith exception does not apply." Perez, 393 F.3d at 461.

In his motion to suppress, Thomas focuses on the third circumstance, arguing that the Leon good-faith exception ought not apply because Detective Coleman's affidavit is bare

bones and devoid of indicia that could give rise to probable cause. See United States v. Wellman, 663 F.3d 224, 229 (4th Cir. 2011) (explaining that the argument that a search warrant contains grossly insufficient information invokes the third circumstance in which Leon is inapplicable).

Under the third Leon exception, a warrant affidavit must be so lacking in "indicia of probable cause" that no reasonable officer could believe probable cause existed to justify a search. This standard demands even less from the government than the "substantial basis threshold" required to prove that probable cause existed in the first place. Bynum, 293 F.3d at 195; see also Williams, 548 F.3d at 318 n.6 (distinguishing the "substantial basis" and "indicia of probable cause" standards). Moreover, the good faith analysis is objective, and must be "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." Herring v. United States, 555 U.S. 135, 145 (2009) (internal citation and quotation marks omitted). To determine "objective reasonableness," a court looks to the information included in the warrant affidavit and any "uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate." McKenzie-Gude, 671 F.3d at 459; United States v. Brown, 481 F. App'x 853, 855 (4th Cir. 2012) ("We may consider information conveyed to the magistrate but not contained in the affidavit as well as uncontroverted facts known to the officer but inadvertently not presented to the magistrate.").

The outcome in this case hinges on the interplay of the Fourth Circuit's opinions in McKenzie-Gude and Doyle. McKenzie-Gude instructs courts undertaking a Leon analysis to "look outside the four corners of a deficient affidavit" and to consider "uncontroverted facts

13

known to the officers but inadvertently not disclosed to the magistrate." 671 F.3d at 459-60.

In McKenzie-Gude, a residential search led to the seizure of a number of guns and explosive

devices from the defendant's bedroom. The affidavit included information showing the

defendant had engaged in criminal activity, but failed to provide any information linking the

defendant to the residence that officers searched. Id. at 456-58. However, the affiants knew

that McKenzie-Gude lived at the residence. Id. Police reports and a letter submitted by the

defendant's co-resident confirmed the affiants' knowledge as to the defendant's home. Id. In

addressing the question whether a court may consider information known to the officers,

but inadvertently excluded from the affidavit, the Fourth Circuit stated:

> Leon instructs that the "good-faith inquiry is confined to the
> objectively ascertainable question whether a reasonably well
> trained officer would have known that the search was illegal" in
> light of "all of the circumstances." 468 U.S. at 22 n.23 [ ]
> (emphasis added): accord Herring[ ], 555 U.S. 135, 145[ ];
> United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004).
> For this reason, we have consistently rejected the notion that
> reviewing courts may not look outside the four corners of a
> deficient affidavit when determining, in light of all the
> circumstances, whether an officer's reliance on the issuing
> warrant was objectively reasonable. See, e.g., [ ]Perez, 393 F.3d
> [at] 462, United States v. Legg, 18 F.3d 240, 243-44 (4th Cir.
> 1994).
>
> . . .
>
> Refusing to consider such information risks the anomalous
> result of suppressing evidence "obtained pursuant to a warrant
> supported by the affidavit of an officer, who, in fact, possesses
> probable cause, but inadvertently omits some information from
> his affidavit." Bynum, 293 F.3d at 109.

Id. at 459-60. McKenzie-Gude explains that a court undertaking a Leon analysis is precluded

from "inquiring into the subjective beliefs of law enforcement officers," but is allowed to

14

consider the "uncontroverted facts known to the officers." Id. at 460. The Fourth Circuit

concluded that the officers acted with the "requisite objective reasonableness" in that case,

despite their inadvertent failure to present uncontroverted facts to the magistrate. Id. at 460.

In Doyle, the Fourth Circuit ordered the suppression of evidence resulting from a

search warrant issued without proper factual foundation. 650 F.3d at 476. The Fourth

Circuit described the warrant application in Doyle as follows:

> Authorization was sought to search Doyle's house for "any and
> all materials, books, magazines, pictures, or videos that are of
> sexual nature involving any minor child" as well as "any
> communication system that could be used to facilitate a sexual
> offense against a child. (computer)." In the section stating the
> "material facts constituting probable cause that the search
> should be made," the affidavit stated: "three minor children
> have come forward and stated that Doyle has sexually assaulted
> them at the Doyle residence. One victims [sic] disclosed to an
> Uncle that Doyle had shown the victim pictures of nude
> children." The affidavit indicated that the affiant learned this
> information through an informant whose credibility was
> determined from "detailed Victim statements of the assault and
> of the Doyle residence, where victims describe the assailants
> [sic] bedroom and vehicle he drives and description of the
> home. Which has all been verified by Sheriffs [sic] Dept."

Id. at 464. The opinion focused on two major deficiencies in the affidavit, both of which

rendered the officer's reliance on the warrant unreasonable. The Fourth Circuit first

addressed the issue of probable cause as to support the existence of a crime, noting the

"remarkably scant evidence in the affidavit … to support a belief that Doyle in fact

possessed child pornography." Id. at 472. While the affidavit in Doyle was submitted to

authorize a search for evidence of the crime of possession of child pornography, the facts

contained in the affidavit did not rise to the level of probable cause that a child pornography

offense had been committed. The closest it came was the statement that one of the victims

15

"disclosed to an Uncle that Doyle had shown the victim pictures of nude children." Id. at

472. The Fourth Circuit found this to be insufficient.

> Without anything more than a description of the photographs
> as depicting "nude children," there were arguably insufficient
> indicia of probable cause to justify reasonable reliance on a
> warrant authorizing a search for child pornography. Insofar as
> possessing nude pictures of children is not per se illegal,
> reasonable officers should at least obtain a description of the
> photographs before relying on them to justify entry into a
> residence.

Id. at 473-74. In short, while the affidavit in Doyle would have been sufficient to support a

warrant concerning sexual assault, the Fourth Circuit held that it was insufficient to establish

probable cause to search for evidence as to the separate crime of possession of child

pornography. It is worth emphasizing that the search warrant in Doyle, unlike the warrant in

the present case, only sought evidence related to the offense of possession of child

pornography.

A second concern addressed by the court in Doyle stemmed from the absence of any

suggestion in the affidavit as to when Doyle may have possessed the alleged child

pornography. The court recognized that though "substantial amounts of time can elapse

before probable cause to search for child pornography becomes 'stale,'" the affidavit's

complete absence of information as to when the alleged child pornography may have been

possessed rendered it "completely devoid of indicia that the probable was not stale."

Id. at 475. The Doyle court concluded that "[h]ere, nothing indicated when and if child

16

pornography existed in Doyle's home. We conclude that an objectively reasonable officer would not rely on a warrant application so devoid of necessary information." Id. at 476.[3]

This case is far closer to the circumstances in McKenzie-Gude than those present in Doyle. First, unlike in Doyle, the search warrant in this case sought evidence related to the crime of aggravated sexual battery, along with the child pornography offenses. Here, the affidavit contained ample evidence of probable cause as to the aggravated sexual battery charge. Not only did the affidavit refer back to the recently obtained arrest warrants for these offenses, it stated that Thomas, in a post-arrest interview, "corroborated both juvenile's statements against him." ECF No. 39–1, at 6. Thus, the threshold failure of the affidavit in Doyle, the lack of evidence to support a finding of probable cause as to the only crime referenced in the warrant—possession of child pornography—is not present here. While the affidavit in Doyle failed to establish probable cause that any crime had been committed, the affidavit in this case plainly is sufficient as to the crime of aggravated sexual assault.[4]

---

[3]     The Doyle court was less concerned with the lack of any information tying the place to be searched, Doyle's house, to the child pornography charge. There was no indication from the victim's uncle as to where the nude pictures were allegedly shown. The court cited its earlier decision in United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988), for the proposition that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." The court determined that "in light of Anderson, we cannot conclude that the district court erred in concluding that, if Doyle actually possessed child pornography, it was reasonable to assume that Doyle kept it at his house." Doyle, 650 F.3d at 472.

[4]     It is true that Detective Coleman's search warrant affidavit also listed the crimes of possession and production of child pornography. As to these two crimes, Detective Coleman's affidavit presents even less factual basis than was present in Doyle. As to the possession and production of child pornography charges, Doyle teaches that Detective Coleman could not have reasonably concluded that the warrant contained probable cause. At the suppression hearing, Detective Coleman made clear that his suspicion that Thomas possessed or had produced child pornography was based on the general notion that those who engage in sexual assault of minors are likely to also produce or possess child pornography. The affidavit contains no facts suggesting that Thomas produced or possessed child pornography. Detective Coleman also gave no indication that he knew any facts not included in the affidavit that would have bolstered

While Detective Coleman's affidavit is sufficient to support a finding of probable cause as to the aggravated sexual battery charge, it makes no mention of Thomas' LG cell phone, other than to say that it was removed from him at the time of his arrest. In other words, the affidavit provides no link between Thomas' LG cell phone and the aggravated sexual battery charge. The next question, therefore, is whether the holding in McKenzie-Gude provides a legal basis sufficient to cover this omission.

McKenzie-Gude allows courts to consider information outside the four corners of the affidavit where the affiant inadvertently omits information from an affidavit. 671 F.3d at 459-60. At the suppression hearing, Detective Coleman made clear that he knew at the time he applied for the search warrant that Thomas communicated with the victims' mother by phone calls to arrange another meeting with the victims. To be sure, Detective Coleman's subjective belief as to whether the affidavit contained probable cause is irrelevant. Leon, 468 U.S. at 922 n.23; United States v. Hodson, 543 F.3d 286, 292-93 (6th Cir. 2008) (explaining that the Leon analysis is conducted independently of the specific beliefs of the officer, but with the "faceless, nameless, reasonably well-trained officer in the field"). Rather, the inquiry is objective and focuses on the facts a "reasonably well-trained officer would have known" in considering the legality of the warrant. McKenzie-Gude, 671 F.3d at 459 (citing Leon, 468 U.S. at 922 n.23).

In Leon, the Supreme Court held that a court should not suppress the fruits of a search conducted pursuant to a "subsequently invalidated" warrant unless "a reasonably well

---

a finding of probable cause that Thomas produced or possessed child pornography. Regardless of the child pornography offenses, Detective Coleman's affidavit establishes probable cause as to the listed crime of aggravated sexual battery.

trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23. Thomas argues that the warrant was invalid because it failed to link him and his alleged criminal activity to the LG cell phone to be searched. Leon requires the court to assess whether Detective Coleman "harbored an objectively reasonable belief in the existence" of this factual predicate. Id. at 926.

Leon states that officers cannot be found to have acted with "objective reasonableness" and suppression remains the appropriate remedy when they rely on "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923. The government contends that Detective Coleman acted with objective reasonableness by relying on the affidavit and "additional evidence" known to him. The government maintains that this "additional evidence"—the fact that Thomas telephoned the victims' mother to set up another encounter—conclusively establishes the objectively reasonable belief in the sufficiency of the warrant.

The court agrees. Leon instructs that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Id. at 922 n.23; accord Herring v. United States, 555 U.S. 135, 145 (2009). For this reason, a reviewing court may "look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable." McKenzie-Gude, 671 F.3d at 459. Because Detective Coleman's knowledge that Thomas had phoned the victims' mother to set up a new encounter supplied the missing

19

link between the LG cell phone and the crime of aggravated sexual battery, his reliance on the issuing warrant was objectively reasonable.

Thomas argues that the search warrant must fail because it does not list the age of the minor victims or the dates of the alleged sexual assaults, again citing Doyle. But the issue of staleness that concerned the Doyle court is not present here. In Doyle, the uncle first reported the sodomy of his step-nephew to the police in August 2003. The victim children were interviewed later that month, and a state search warrant was issued and executed in January, 2004. The indictment was not forthcoming for more than three years, issued as it was on March 6, 2007. The Doyle court was justifiably concerned that there were no facts stated in the warrant as to when Doyle possessed the nude pictures of children, noting that "[a] valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Doyle, 650 F.3d at 474 (emphasis added) (quoting United States v. McCall, 740 F.2d 1331, 1335-36 (4th Cir. 1984)). The Doyle court concluded "that even if the affidavit established probable cause, it was completely devoid of indicia that the probable cause was not stale." Id. at 475. The complete lack of information as to when the events supposedly creating probable cause to search took place caused the Doyle court to conclude that the officers could not have reasonably relied on the resulting search warrant.

But this case is different. While Detective Coleman did not list the dates of the alleged sexual assaults in his affidavit, the offense dates were noted on the arrest warrants issued by another magistrate in Winchester eight days earlier. More importantly, at the time he applied for the LG cell phone search warrant, Detective Coleman had an objective reason

20

to believe that Thomas' phone calls to the victims' mother took place some time around October 2014. Detective Coleman knew this because his investigation revealed that Thomas visited the hotel with two minors on October 11, 2014, the date he used as the date of offense in the arrest warrants.[5] Unlike in Doyle, where no officer had any idea when Doyle may have possessed the alleged nude photographs, Detective Coleman knew within a reasonably narrow window when the aggravated sexual battery took place and the phone calls were made. It was reasonable for Detective Coleman to infer that the phone seized from Thomas at his arrest on January 5, 2015 had been used by him just a few months earlier to call the victims' mother. See Anderson, 851 F.2d at 729 ("[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence."). As such, the staleness concern of the Doyle court is simply not present here.

### III.

Having determined that Detective Coleman's reliance on the search warrant was objectively reasonable and subject to the Leon good faith exception, the next question concerns whether the review of the SD card by the Virginia State Police was authorized by the warrant. Based on the evidence adduced and the Fourth Circuit's opinion in United States v. Williams, 592 F.3d 511 (4th Cir. 2010), the search of the LG cell phone's SD memory card was proper.

---

[5]     It is of no moment that Detective Coleman ultimately determined that Thomas sexually assaulted MV3 and MV4 a month earlier, on September 16, 2014, and that the October 11, 2014 hotel stay was with two other children. Either way, Doyle's staleness concerns are not present here.

Case 5:16-cr-00001-MFU-JCH   Document 46   Filed 12/15/16   Page 21 of 26   Pageid#: 333

In Williams, the Fairfax County Police requested a search warrant for Williams' home during their investigation of threatening emails sent to the Fairfax Baptist Temple. Id. at 515. During the course of the search of Williams' home, the FBI seized computers and electronic media and later searched their contents, finding child pornography. Id. at 515-16. Williams sought suppression of the child pornography, arguing that the warrant, authorizing a search for evidence relating to other crimes involving threats of bodily harm and harassment by computer, could not reach evidence of child pornography.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." At its core, the Fourth Amendment protects against general warrants that authorize "exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized." Andresen v. Maryland, 427 U.S. 463, 480 (1976). The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant.

When a search is conducted pursuant to a warrant, it "is limited in scope by the terms of the warrant's authorization." United States v. Phillips, 588 F.3d 218, 223 (4th Cir. 2009). But the terms of the warrant are not to be interpreted in a "hypertechnical" manner. United States v. Robinson, 275 F.3d 371, 380 (4th Cir. 2001). Rather, they should be read with a "commonsense and realistic" approach, to avoid turning a search warrant into a

22

"constitutional strait jacket." Phillips, 588 F.3d at 223 (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965), and United States v. Dornhorfer, 859 F.2d 1195, 1198 (4th Cir. 1988)). Here, the warrant authorized the search of the LG cell phone for phone calls, gps locations, photos, text messages, voicemails, and other evidence related to the crime of aggravated sexual battery. Obviously, a search of the LG cell phone for evidence supporting the mother's and victims' claims of phone communication is within the express scope of the warrant's authorization. The same is true for gps locations, data, and photos that may corroborate the aggravated sexual battery charges.

The fact that evidence of additional crimes—possession and production of child pornography—was located while searching the LG cell phone pursuant to the warrant's authorization does not render the warrant overbroad or otherwise invalidate it. "Courts have never held that a search is overbroad merely because it results in additional criminal charges." Phillips, 588 F.3d at 224.

> Thus, the fact that possession of child pornography is itself a crime does not render the seizure outside the scope of an investigation into the computer harassment crime. Whether seized evidence falls within the scope of a warrant's authorization must be assessed solely in light of the relation between the evidence and the terms of the warrant's authorization.

Williams, 592 F.3d at 520-21. The LG warrant authorized the police to look for data related to the crime of aggravated sexual battery. Plainly, the images of child pornography located on the LG cell phone's SD card "were sufficiently relevant to the crimes designated in the warrant to justify their seizure under the warrant." Id. at 521. As the LG warrant, by means of the Leon good faith exception, authorized the search of the LG cell phone, the child

23

pornographic images seized fell within its terms and are not properly the subject of suppression under the exclusionary rule.

Even if it could be argued that the LG warrant did not authorize the seizure of the child pornography images and videos found on the SD memory card, the court alternatively concludes that the seizure of these images and videos falls within the plain view exception to the warrant requirement. See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).

> Under this exception, police may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent.

Williams, 592 F.3d at 521 (internal quotation and punctuation omitted) (quoting United States v. Legg, 18 F.3d 240, 242 (4th Cir. 1994)).

In this case, the warrant authorized a search of Thomas' LG cell phone for evidence relating to aggravated sexual battery. As such, "[t]o conduct that search, the warrant impliedly authorized officers to open each file on the [LG cell phone's SD card] and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—i.e., whether it related to the designated Virginia crime." Williams, 592 F.3d at 521-22. Further,

> once it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied. First, an officer who has legal possession of the computer and electronic media and a legal right to conduct a search of it is "lawfully present at the place from which the evidence can be viewed," thus satisfying the first element of the plain-view exception. Second, the officer, who is authorized to search the computer and electronic media for evidence of a

24

crime and who is therefore legally authorized to open and view all its files, at least cursorily, to determine whether any one falls within the terms of the warrant, has "a lawful right of access" to all files, albeit only momentarily. And third, when the officer then comes upon child pornography, it becomes "immediately apparent" that its possession by the computer's owner is illegal and incriminating. And so, in this case, any child pornography viewed on the computer or electronic media may be seized under the plain-view exception.

Id. at 522 (internal citations omitted). As the Affidavit of Allison Boos, Digital Investigative

Analyst, High Technology Investigative Unit, Child Exploitation and Obscenity Section,

Criminal Division, United States Department of Justice, makes clear, there is no practical

difference between an officer searching computer files and digital files located on an SD

memory card. ECF No. 41–1.[6] Thus, although Detective Coleman's affidavit was insufficient

to justify a search of the LG cell phone for evidence of the possession and production of

child pornography offenses, the Virginia State Police crime lab had lawful authority under

Leon to search Thomas' LG cell phone and its SD memory card for evidence related to the

crime of aggravated sexual battery. In so doing, the crime lab was lawfully authorized to

access, albeit only momentarily, all of the files on the SD card. As in Williams, once child

pornography images are viewed, their illegal nature becomes immediately apparent. As such,

their seizure was lawful under the plain view exception.

**IV.**

Application of the exclusionary rule to suppress the evidence found on Thomas' LG

cell phone is not called for in this case. Detective Coleman applied for a search warrant to

---

[6] The court exercises its discretion to admit the Boos affidavit for the limited purpose of providing background on the nature and organization of digital data stored on SD cards, as to which the court cannot discern any factual dispute.

25

examine the phone's contents, having ample information that Thomas had committed aggravated sexual battery crimes and used a phone to perpetrate those crimes. Although his search warrant affidavit could have provided more information linking Thomas' crimes to evidence located on his phone, it is clear that Detective Coleman acted reasonably and with objective good faith. There is no suggestion of police misconduct in this case, and Detective Coleman's good faith reliance on the LG warrant was objectively reasonable and grounded in the facts of his investigation. For these reasons, Thomas' motion to suppress, ECF No. 28, will be **DENIED**.

An appropriate order will be entered.

Entered: 12/15/2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge